Thank you, your honor. May it please the court, my name is Dan Polson. I'm the assistant federal defender representing Kim Cook and this is a habeas appeal and it presents the question of whether the state of Alaska violated Mr. Cook's Sixth Amendment right to counsel of his choice when he was unable to obtain the case based on the Alaska court's refusal to set aside a default judgment that was imposed against him in a closely related civil matter. The effect of the state court's refusal to set aside the default judgment had the foreseeable effect of preventing Mr. Cook from getting the assets necessary to hire a private attorney and as a result he proceeded to trial pro se and was convicted and sentenced to 99 years. Can I ask you about the point you just made there, the foreseeable effect of the state trial court's ruling not to set aside the default judgment? Just help me out with the timeline. As I understand it, almost all of the funds that your client wanted to use to hire that private lawyer had already been seized by plaintiff's counsel. I thought it was by mid-July or so and what I have in my notes is that it may be July 19th or July 21st that your client first moved to set aside the default judgment? Correct. And then the question would become even if the state trial judge in that case had properly set aside the default judgment, there seems to be some question as to whether at that point your client would have been able to get the money back anyway and so if you could speak to that in any way you're able to based on the record that would help. Sure, our position is that the estate of the slain officer would not have had any entitlement to seize those funds because they were after all not connected to the criminal case. They were untainted assets that Mr. Cook had at his disposal and I want to underscore that Mr. Cook made diligent efforts to retain the services of a private attorney and there's no dispute that he did prior to the estate attaching those assets. He had the money that he needed to hire the attorney he wanted and our position is that if he had been successful in getting the default judgment set aside, the estate would have assumed the position of any other creditor and Mr. Cook would have been entitled to use those funds as he saw fit to represent himself. Okay, just help me out again on the facts. Let's just say as of July 19th, we'll give your client the earliest date that he would have filed the motion to set aside the default judgment. Did the plaintiff's lawyer in the civil case already have the funds that your client wanted to use? I think it was within a matter of I think the default judgment was imposed I think a day or two after he failed to appear and I think within the next couple of weeks the estate was able to to seize basically every asset that he had. So that's that's my understanding and so my point is that by the time your client would have been in a position to have the state trial judge set aside the default judgment, all of the assets were already in the hands of the plaintiff's lawyer and so at that point even if the judge had acted properly, your client would still have needed some way to claw back those funds and what your opponent says is that your client argued I think it was in maybe it was on appeal when he was challenging the refusal to set aside the default judgment. I think your client acknowledged that there wouldn't be any prejudice to the other side if the default judgment were vacated because they could still basically they had a mechanism to still hold on to the funds they had already seized in order to I guess protect their potential interest in getting the judgment against them and that is ultimately what the Alaska Supreme Court wasn't set in reverse. Well I don't believe that the Alaska Supreme Court had occasion to address the what the effect would have been if he had been successful in setting aside the default judgment but let there be no mistake that I mean the the estate got a default judgment for seven million dollars and I believe that that ended up getting resolved as three hundred thousand dollars after the default judgment was set aside but I think that it's I think it's incorrect to say that in an alternative scenario Mr. Cook wouldn't have been able to proceed with counsel of his choice and after all we are talking about a structural error we are talking about something that we can't envision what the alternatives would have been like we just say that if you're not able to get counsel of your choice I mean that's that's the kind of error that tells us that we don't have any confidence in the outcome of the district of the I'm sorry of the civil court was that it failed to consider Mr. Cook's Sixth Amendment rights when it was deciding whether or not to set aside the default judgment in the first place so that's what we're arguing and just to clarify and I since I have I have about four minutes left I'm gonna try to reserve a couple minutes here there is no question that the judge in the civil case was aware that Mr. Cook was attempting to get the money necessary to hire an attorney in the criminal case after all the judge who handled the civil case presided over hearings in the criminal case and handled a representation hearing where the the subject of Mr. Cook's attempts at trying to hire private counsel were brought up and it's especially forgive me can I ask a question right there you're focusing on the trial courts the Superior Court judge Cutler's correct being the same and I understand that I think we've studied the record carefully factually speaking but what I don't understand is whether you're now making a 2254 d2 argument about the facts or is your argument limited to d1 so we're right we the way this was briefed we argued that this was an unreasonable application of clearly established federal law but here's the thing that the factual I need to know so you're not bringing a d2 argument please we have not we correct in the proceedings below we didn't litigate whether or not the facts were unreasonable because okay so if it's a d1 what law are you relying on what Supreme Court authority so we cited heavily Gonzalez Lopez which you know stands for the proposition that the defendants right to counsel of his choice is structural error that you don't engage in these kind of after-the-fact guessing games about what the outcome might have been you simply give the defendant a new trial and that tells us that this is a right that is sacrosanct and that the the system of a violation before we get to structural error so which case is it from the Supreme Court that you contend so we have a system in that violation sir we primarily relied on Gonzalez Lopez and I'm going to take a brief break and I will reserve two minutes and 45 seconds for a rebuttal that's fine thank you we'll hear from opposing counsel thank you your honor may it please the court my name is Diane Wendlandt and I represent the respondent Dean Marshall there are three things that this court should keep in mind when deciding this case first and foremost this is a federal habeas case your review is limited by the requirements of EDPA specifically you may grant relief only if the petitioner proves that the state court's decision violated clearly established federal law there is no clearly established federal law in fact there is no case law at all that Mr. Cook has cited that says a criminal conviction must be set aside simply because an order in a private civil case a case to which the state was not a party had an incidental effect on the defendants ability to afford counsel in the criminal case there is simply no case law and certainly no clearly established federal law that would support that ruling that should decide this case second Cook's argument assumes that he would have gained access to his assets if the default judgment had been set aside that's not true and it's directly contrary to what Cook argued to the Alaska Supreme Court in Cook versus Roland in that case mr. Cook argued that there would be no prejudice to the plaintiff to mrs. Roland and the estate if the default judgment were set aside the argument is there are procedures under Alaska court rules that allow pre-judgment attachment and more importantly under 60 B which is the set aside rule the court may impose any condition that would be just before setting it aside and that's what the Supreme Court the Alaska Supreme Court pointed to when it said look we should set aside this default judgment because there will be no prejudice because those assets can remain frozen and they will be there to the extent that the default judgment ultimately a judgment is entered in the plaintiff's favor in that case let me ask you a question on that point not that familiar with the Alaska rules of court the the civil rule that you just alluded to in terms of mr. Cook's brief in the in the civil case I took a look at the rule that he cited and it did not seem applicable at all to a tort action it sounded like it was applicable only to getting some kind of a you know a pretrial writ of attachment when there was I can't remember what it the facts that it related to involve something other than a tort claim why are you so confident in saying that even if the default judgment had been set aside that the plaintiff's lawyer in the civil suit would have been entitled to retain the money pre-judgment and hold on to it thereby depriving him of the funds to hire counsel according to the Alaska Supreme Court when they reviewed this it was not under rule 55 specifically it was under rule civil rule 60 and under civil rule 60 a judgment which is what this was maybe set aside and specifically under B 60 B it says on motion and upon such terms as are just and under Alaska law that would include a just term would include retaining or at least freezing the assets and putting them in escrow well it was the reason that that occurred though at that stage of the case is that he had already been convicted of the underlying crime and so at that point liability could no longer be contested and all that was going to be remanded was an issue of damages and so at that point I can understand why the Alaska Supreme Court would have said well listen there's no point in having the lawyer disgorge this 300 something thousand dollars given that he's been he's basically been found liable and presumably the damages are going to be well in excess of that but back when he was moving to set aside the default judgment he hadn't been convicted of anything and the remand would have been for a trial on the merits of the underlying claim I don't see any authority that says in that posture a plaintiff in a private civil tort action is entitled to some kind of a pre-judgment writ of attachment on the defendant's assets and again he the civil tort plaintiff may not have been if Cook had come in and answered and no default had been entered but the Supreme Court explained that we were not operating under those conditions we were and because 60 B says that condition that it can be conditioned on just terms and there's nothing in the Supreme Court's discussion of this potential prejudice potential prejudice becomes important when setting aside the default judgment if Cook had answered we would be under different rules but this was a 60 B motion and potential prejudice was a fact in deciding whether or not to set that default judgment and if you take a look at the Supreme Court's decision it's 49 P third and it is at page 267 where they talk about the potential prejudice and nothing in that discussion limits the prejudice or limits the the dimension of the fact that they could condition it on not allowing those assets to go back to the defendant nothing there says it's conditioned on the fact that liability has already been decided so there's nothing about this Supreme Court opinion and how it interprets the Alaska civil rule that would suggest that this applied only because liability had been decided and in fact that's how mr. Cook argued the case in his brief and I would refer the court to excerpt of record page 14 30 1 4 3 0 so ultimately even though they're clearly the state is not we're not arguing that the default judgment should have remained in place we're simply saying that even if it had been set aside there was no guarantee that he was going to get his assets back back he argued the very opposite the third point is simply that as are the Alaska courts have recognized there's no principled way to limit the scope of the rule that cook is proposing here he has listed a number of factors that he thinks makes it more likely that you will agree with him here but none of those really provide a way to limit the scope of this rule so for example by the type of predator the fact that these cases were supposedly intertwined they were not intertwined they were separate cases granted they had similar facts this was the estate of this Lane officer but there's no principled way to say that the victim would not be entitled to recover but a bank or a credit card company would that makes no sense under Sixth Amendment analysis likewise the trial judges awareness of the criminal case that also is not a principle distinction because it was then the Sixth Amendment right would turn on the sides of the court the number of judges and whether the defendant decides to come in and tell the judge about the criminal case that can't be a principle distinction well I don't I mean I think you're just knocking down a bunch of straw men to be honest because the argument that your opponent is making from Gonzales Lopez I thought was much more straightforward it was simply that in that case there was an erroneous ruling by a judge that had the direct effect of precluding the defendant from hiring counsel of his choice there it was the erroneous denial of a Prohoc Dece admission motion yes it occurred in the criminal case itself and in our case the erroneous ruling occurred in a civil case but nonetheless it's it's it's state action according to his theory that had the direct effect of precluding him from hiring counsel of his choice and I don't really see that big of a distinction between the fact that the ruling in Gonzales Lopez occurred in the criminal case and here the ruling occurred in this related civil case that doesn't seem to me to to make a big difference from just from a logical standpoint and that's the only principle that I think he's arguing for is that if the ruling in the other case was erroneous and had the direct effect of precluding him from hiring counsel of choice that's a Sixth Amendment violation because it's the state that interfered with his ability to hire the lawyer that he wanted to with all due respect your honor I believe that that makes all the difference in the world the fact that this occurred in a private civil court action over which the state as prosecutor certainly had no control the state is responsible according to his theory because it's the state trial judge that issues the erroneous ruling just like in Gonzales Lopez that the key that's why I was I was asking you about the causal connection between the erroneous ruling and his access to the funds because if you're wrong on that point and if it's the state judge had in properly set aside the default judgment if we knew that he would then have gotten access to the funds there would be a direct causal connection between that erroneous ruling by a state actor and his inability to hire counsel of his choice but your honor we our position is that the trial judge in the civil case was not obligated to make rulings in the civil case based on concerns about what was happening in the criminal case that would that would have been important if this were a civil forfeiture that the government was involved in but it was not it was a private plaintiff in that civil action and there is nothing in federal law that says that private civil creditors of any kind are required to take a second seat behind a criminal defendant Sixth Amendment right that simply doesn't exist as any sort of clearly established federal law I agree with you but that's I just think you're missing the the Sixth Amendment theory that your opponent is advocating has nothing to do with something that the creditor did in the private civil case it has everything to do with the state actor namely the judge and what that judge did to prevent him from being able to hire counsel of his choice and all he's saying is that if the state judge's right so there's but then yeah but then your honor it brings you to I believe it was the Court of Appeals or the Supreme Court's concern which was that by doing this you have made criminal convictions hostage the civil cases that have no relationship to the criminal case and more importantly the fact that there was an error of some type in the civil case an error that had nothing to do with the and that simply cannot be the way this works because there is no way to limit that and years after the fact a criminal conviction could be set aside simply because of something entirely unrelated in an unrelated case but even though this is a trial judge it wouldn't necessarily be limited to a trial judge in the same jurisdiction in the same court it simply can't be as a practical matter. Anything further? Judge Botford? Judge Beatty? No? All right. Thank you for your argument Ms. Wendland. We'll hear from opposing counsel. So we take issue with the notion that the civil and the criminal matters were entirely separate and distinct not only did they arise from the same set of facts not only did they have the same judicial officers sorry same judicial officer assigned in both cases but we know as a factual matter that the judge who presided over the civil case was aware that the default judgment was having the effect of interfering with Mr. Cook's ability to find counsel in the criminal case that that was something that I don't think was ever disputed on appeal in the post-conviction relief matter and I would direct the court to the dissent opinion by the Alaska Supreme Court in the post-conviction relief appeal. That's the problem you are directing us to the dissent and the dissent certainly took issue with that but that's not what the majority found that you know that's the last decision. That's my question. D2 argument so could you could you slow down don't don't I'll give you time to answer the question but you are now going to a factual distinction it seems to me and so I really need to hear your position on this. Well I think the issue with the I think the where the majority erred was in trying to and holding Mr. Cook to the burden of proving that the various state actions which thwarted his ability to get the funds to hire his attorney were were intentional and that is where the majority took a wrong turn so I think from the majority's perspective it wasn't necessary they didn't need to dwell on all the various state actions that conspire to interfere with Mr. Cook's amendment rights they just said you know it doesn't matter the factual record was was was irrelevant to them but from the dissent's view which adopted what we think is the correct interpretation of the Sixth Amendment the question is did state actions erroneous state actions have the effect of interfering with the Sixth Amendment rights and there's no question about that now I realize that the respondent is making the argument that it wouldn't it wouldn't be fair or wouldn't have been just for the plaintiffs in the civil action to essentially you know sit on the sidelines while Mr. Cook represented you know went to trial in the criminal case but that is ultimately the balancing test that that Mr. Cook was deprived of he was not given that opportunity the state court obstinately refused to set aside the default judgment and Mr. Cook was diligent in trying to get that set aside he asked to stay the civil proceedings he asked for the criminal case to be delayed until the appeal in the civil case could be resolved and in each term he was he was denied and those that that constellation of actions by the state courts are what we're complaining of that's what we're saying amounted to a Sixth Amendment violation and with that I will stand down thank you don't say that just yet let me just check to see if my colleagues have any questions any remaining questions judge baby judge Wofford no okay in that case we are done and I thank you both for your very helpful arguments say we'll take that case thank you thank you
judges: Christen, Watford, Bade